UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/29/17

------------------------------------------------------------------X
:
CENTURY SURETY COMPANY,                          :
:                    16 Civ. 4196 (PAE)
                          Plaintiff,             :
:                    OPINION & ORDER
             -v-                                 :
:
EM WINDSOR CONSTRUCTION INC., LIBERTY            :
BLUE GROUP LLC, ST OWNER LP, PCV ST OWNER        :
LP, COMPASSROCK REAL ESTATE LLC, and             :
RICARDO PAREDES,                                 :
:
                          Defendants.            :
:
------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

In this action, now at the summary judgment stage, an insurer, Century Surety Company ("Century Surety"), seeks a declaratory judgment that, under the terms of its insurance policy, it owes no coverage to its insured, EM Windsor Construction Inc. ("EM Windsor"), or several other parties that claim additional-insured status under the policy. The claims under the policy have been made in connection with a personal injury lawsuit. As the parties agree, the principal issue before this Court is whether Century Surety can disclaim coverage under an exclusion in the policy, referred to as the "Action Over Exclusion."

For the reasons that follow, the Court holds, with Century Surety, that the Action Over Exclusion applies to the personal injury lawsuit at issue. The Court further holds, with Century Surety, that Century Surety timely invoked the exclusion. The Court therefore grants summary judgment to Century Surety on its motion for summary judgment on its declaratory judgment claim as against the additional insureds. The Court also grants a default judgment to Century Surety on its claim for a declaratory judgment as to EM Windsor.

1

## I.    Background[1]

This action concerns how an insurance policy—and, in particular, an exclusion to

coverage within it—applies to an ongoing personal injury suit (the "*Paredes* Action"). The

parties to the suit are an injured construction employee, Ricardo Paredes; his employer, a sub-

contractor on a project; the prime contractor; and the owners of the building on which Paredes

alleges he was injured. Because the parties dispute not only whether the exclusion to coverage

applies but also whether Century Surety timely invoked that exclusion, the Court here reviews

the extensive correspondence among the parties regarding coverage that preceded this

declaratory judgment action.

### A.    The Parties to the *Paredes* Action

---

[1] The Court's account of the underlying facts of this case is drawn from the parties' submissions on the motions and cross-motions for summary judgment, including the Declarations (and attachments) of Meryl L. Lieberman ("Lieberman Decl."), Steven I. Lewbel ("Lewbel Decl."), and William J. Mitchell ("Mitchell Decl."), as well as the parties' Joint Statement of Undisputed Material Facts (Dkt. 70) (the "JSF"), and respective Rule 56.1 statements and counterstatements. In response to plaintiff's Rule 56.1 statement, only one defendant, the Liberty Blue Group LLC, has submitted a counterstatement.

Citations to a party's Rule 56.1 statement incorporate by reference the documents cited therein. Where facts stated in a party's Rule 56.1 statement are supported by testimonial or documentary evidence, and denied by a conclusory statement by the other party without citation to conflicting testimonial or documentary evidence, the Court finds such facts true. *See* S.D.N.Y. Local Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); *id.* at 56.1(d) ("Each statement by the movant or opponent . . . controverting any statement of material fact[] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

The parties' counter-statements of facts mark certain statements as "disputed" but, instead of identifying an actual factual inconsistency, often only offer additional context or dispute the relevance of the underlying facts. Where these counter-statements do not identify a true factual dispute, the Court treats the statement as undisputed.

ST Owner LP, PCV ST Owner LP, and Compassrock Real Estate LLC (collectively, the "Ownership Entities") own a building located at 510 East 20th Street, New York, New York. The Liberty Blue Group LLC ("Liberty Blue") is a contractor who was hired by the Ownership Entities to do construction work at 510 East 20th Street. EM Windsor was Liberty Blue's subcontractor on this project.

By contract, EM Windsor agreed to indemnify Liberty Blue and provide it with additional-insured coverage under its insurance policy with Century Surety. *See* Lewbel Decl. Ex. F. In its contract with Liberty Blue, EM Windsor further agreed to indemnify the Ownership Entities. Thus, although EM Windsor and the Ownership Entities do not have a contractual relationship, the Ownership Entities have nevertheless asserted their entitlement to additional-insured status under the policy. JSF ¶¶ 5-8.

## B. Century Surety's Insurance Policy Covering EM Windsor

Century Surety issued the insurance policy at issue, policy CCP 802785 (the "Policy"), to EM Windsor to cover the period December 6, 2012, to December 6, 2013, which covers the date on which Paredes alleges he was injured. JSF ¶ 9. The Policy replaced an earlier policy issued by Tower Insurance Company of New York ("Tower Insurance"). JSF ¶ 17. The Tower Insurance policy had originally covered the same period—December 6, 2012, to December 6, 2013—but was cancelled before December 6, 2012, and thus never came into effect. *Id.*

Under the Policy, Morstan General Agency ("Morstan") is Century's agent and BKB Insurance Agency, LLC ("BKB") is EM Windsor's agent. JSF ¶¶ 10–12; *see* Policy at CEN 00023.

The Policy provides insurance coverage for three principal types of harms: (1) "Bodily Injury and Property Damage Liability" ("Coverage A"); (2) "Personal and Advertising Injury

3

Liability" ("Coverage B"); and (3) "Medical Payments" ("Coverage C"). Lieberman Decl., Ex. B (the "Policy"). Under each provision, the Policy enumerates many "Exclusions." *Id.* As a general matter, the Policy provides coverage to EM Windsor for injuries suffered by third parties, but *not* for injuries to its own employees.

Central to this case is an exclusion known as the "Action Over Exclusion." It provides that the Policy does not cover:

> "Bodily injury" to:
> (1) An "employee" of the named insured arising out of and in the course of:
>    (a) Employment by the named insured; or
>    (b) Performing duties related to the conduct of the named insured's business; or
> (2) The spouse, child, parent, brother or sister of the "employee" as a consequence of Paragraph (1) above.
>
> This exclusion applies:
> (1) Whether the named insured may be liable as an employer or in any other capacity; and
> (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Policy at CEN 00080.

### C.    The Allegations in the *Paredes* Action

Ricardo Paredes filed the underlying lawsuit, the *Paredes* Action, in the Supreme Court of the State of New York, Queens County, where it remains pending. JSF ¶ 19. Paredes's suit alleges that, on December 7, 2012, while working for EM Windsor, Paredes fell from a ladder and was injured as a result of the negligence of Liberty Blue and the Ownership Entities. JSF ¶ 21. More specifically, Paredes's lawsuit claims:

> that on December 7, 2012, while plaintiff RICARDO PAREDES, was lawfully and carefully working on a ladder at said premises, he was caused to fall from said ladder by reason of the negligence of the defendant, its agents, servants and/or employees in the ownership, operation, direction, supervision, possession, control, construction, repair, rehabilitation and/or alteration of the said premises sustaining the injuries hereinafter alleged.

4

JSF ¶ 42; *see* Lieberman Decl. Ex, F (the "*Paredes* Complaint").

On April 30, 2015, Paredes filed his amended complaint in the underlying action. JSF ¶ 19. On September 25, 2015, Liberty Blue filed a third-party complaint in the *Paredes* Action against EM Windsor, seeking common-law indemnification and contribution and asserting related claims ("Liberty Blue's Third-Party Complaint"). *See* JSF ¶ 22. On March 7, 2016, the Ownership Entities filed their own third-party complaint against EM Windsor in the underlying *Paredes* Action (the "Ownership Entities' Third-Party Complaint"). JSF ¶ 24.

### D.     The Indemnification Request and Century Surety's Disclaimer of Coverage

Before filing their third-party complaint, the Ownership Entities sought indemnification for their potential liability for Paredes's injury. They did so in a letter to EM Windsor dated February 2, 2015 and a follow-up letter to EM Windsor, by the ST Owner entities, dated December 15, 2015. JSF ¶¶ 26–27.[2] Both letters went unanswered.

After filing its third-party complaint, Liberty Blue sought indemnification for potential liability. On March 1, 2016, Litchfield Cavo LLP, counsel for Liberty Blue in the *Paredes* Action, sent a letter to Tower Insurance, seeking indemnification and defense in that action. JSF ¶ 28; *see* Lieberman Decl., Ex. K (the "March 1 Letter"); Lewbel Decl., Ex. I (same). The March 1 letter sought a "defense takeover"—that is, Liberty Blue's defense counsel, assigned by Liberty Blue's insurer, sought to be replaced by defense counsel assigned and paid for by EM Windsor's insurer. JSF ¶ 28. Liberty Blue did so citing a "contractual indemnification" provision in the agreement between EM Windsor and Liberty Blue. *Id.* On March 4, 2016, Liberty Blue's counsel sent another letter to Tower Insurance, this time stating that EM Windsor

---

[2] Neither letter was sent to Century or its representative, Morstan. JSF ¶¶ 26, 27; *see* JSF ¶¶ 10–11.

had not answered Liberty Blue's third-party complaint and that Liberty Blue intended to move for default judgment. JSF ¶ 29; *see* Lieberman Decl., Ex. L (the "March 4 Letter"). The March 1 and March 4 letters were copied to Tower's claims administrator, AmTrust North America, but not to Century Surety or its representatives. *See* JSF ¶¶ 28, 29; Lieberman Decl., Exs. K, L.

Tower Insurance was not, however, the proper recipient for Liberty Blue's correspondence because Tower was not EM Windsor's insurer. On March 14, 2016, AmTrust, Tower Insurance's claims administrator, realized that the insurance policy issued by Tower Insurance had been cancelled before it went into effect. *See* Lieberman Decl., Ex. E (Affidavit of Glenn Denzler), at 2–3. After reviewing the file for Tower Insurance's policy, Glenn Denzler, AmTrust's claims handler, emailed the March 7, 2016, Ownership Entities' Third-Party Complaint to Century Surety, Morstan (Century Surety's agent), and BKB (EM Windsor's Agent). *See* Denzler Aff. at 3; Liberty Blue Resp. to Pl. 56.1 ¶ 34.[3] The Ownership Entities' Third-Party Complaint, however, does not include "any allegations identifying Mr. Paredes's employer." JSF ¶ 25.

On March 23, 2016, Susan Weller, a claims adjuster for Century Surety, had a phone conversation with EM Windsor's principal, Vjollca Gjeck. *See* Liberty Blue Resp. to Pl. 56.1 ¶ 37. According to Century Surety, during that call, Mr. Gjeck informed Ms. Weller that Mr. Paredes had been an employee of EM Windsor at the time of the accident at issue in the *Paredes* Action. See Pl. 56.1 ¶ 37. The next day, March 24, 2016, Ms. Weller sent a letter to all parties in the underlying *Paredes* Action. Lieberman Decl., Ex. R (the "March 24 Letter"); *see* JSF ¶¶ 31–41. In the letter, which is labeled "Partial Disclaimer / Third Party Suit

---

[3] The parties dispute whether Century Surety had been made aware of the *Paredes* Action before March 14, 2016, but they do not dispute that, on March 14, 2016, Denzler emailed Century Surety. *See* Liberty Blue Resp. to PL. 56.1 ¶¶ 33–34.

Acknowledgement," Ms. Weller referenced the phone conversation she had had the previous day with EM Windsor's principal, Mr. Gjeck, in which Mr. Gjeck had notified her that Paredes was an employee of EM Windsor Construction. *Id.* at 1. The March 24 Letter states that, after reviewing the *Paredes* Action and the Policy, Century Surety had decided to "provide a defense to EM Windsor under a Partial Disclaimer." *Id.* at 2. Ms. Weller's letter on behalf of Century Surety further states that, "[i]f Paredes confirms he was an employee working on behalf of EM Windsor at the time of the accident, then there is no coverage for the Paredes litigation for EM Windsor, The Liberty Blue Group or any other individual or entity claiming coverage under EM Windsor's policy with Century." *Id.* at 4–5. However, the letter states, because Century was not yet disclaiming its duty to defend EM Windsor, it was thereby informing EM Windsor Construction that it had "assigned the defense of EM Windsor for the above cited litigation to" Scott F. Morgan of Weiner, Milo, Morgan & Bonanno LLC. *Id.* at 6–7. The letter warned that Century Surety was "reserving its right to withdraw as counsel and to seek reimbursement for costs incurred as a result of providing EM Windsor a defense should it be determined that no coverage exists for this matter." *Id.* at 7.

The March 24 Letter was copied to Mr. Morgan; Christopher J. Gorayeb of Gorayeb & Associates, attorney for Mr. Paredes in the underlying action; Ahmuty, Demers & McManus, counsel for the Ownership Entities in the underlying action; ST Owner LP c/o Tishman Speyer; PCV ST Owner LP; Compassrock Real Estate; Louis E. Eckert of Litchfield Cavo LLP, counsel to Liberty Blue; Liberty Blue; BKB; and Morstan. *See* JSF ¶ 31. The copy sent to PCV ST Owner was returned by the U.S. Postal service as undeliverable. JSF ¶ 33.

On April 13, 2016, Mr. Morgan sent copies of two documents to Ms. Weller. *See* Lieberman Decl., Ex. S; Liberty Blue Resp. to Pl. 56.1 ¶ 45. Century Surety and the defendants

dispute precisely how to characterize those documents. The first is the Ownership Entities' Third-Party Complaint in the *Paredes* Action, an impleader action brought by the Ownership Entities against EM Windsor. Lieberman Decl., Ex. S. The second is Paredes's pre-litigation petition, which consists of an "Affirmation" of Mr. Gorayeb, attorney for Mr. Paredes (the "Gorayeb Affirmation"), as well as the "Petitioner's Affidavit" of Mr. Paredes (the "Paredes Affidavit"). *See id.* The Gorayeb Affirmation and the Paredes Affidavit both state that, on the date of the alleged accident (December 7, 2012), Mr. Paredes had been employed by EM Windsor.

On April 21, 2016, after receiving the Gorayeb Affirmation and the Paredes Affidavit, Century Surety sent a second letter to EM Windsor (the "April 21 Letter"). JSF ¶ 44. The April 21 Letter disclaimed coverage for EM Windsor "or any other person or party claiming coverage under the Century policy for this matter." *See* JSF ¶ 46. It explained that "coverage is unequivocally denied to all parties based on application of the policy's Action Over Exclusion." *Id.* The letter referred to both the Gorayeb Affirmation and the Paredes Affidavit as evidence that Paredes had been employed by EM Windsor "on the date of the accident that is the subject of the lawsuit." *Id.* The letter asserted that the Action Over Exclusion therefore excluded the Paredes Action from coverage under the Policy. *Id.*

Century sent the April 21 Letter to EM Windsor, copying Mr. Morgan, its counsel; Mr. Gorayeb, Mr. Paredes's counsel; Ahmuty, Demers & McManus, the Ownership Entities' counsel; ST Owner LP c/o Tishman Speyer; PCV ST Owner LP; Compassrock Real Estate; Louis Eckert of Litchfield Cavo LLP, Liberty Blue's counsel; Liberty Blue; BKB; and Morstan. JSF ¶¶ 44, 48.

On May 6, 2016, in a letter to Century Surety, Liberty Blue's counsel, Louis Eckert, formally objected to Century Surety's disclaimer. *See* Lieberman Decl., Ex. U. Ms. Weller replied in a May 6, 2016, email that Century Surety had "never received a tender from" Liberty Blue. JSF ¶ 53. Louis Eckert of Litchfield Cavo replied that Liberty Blue had "tendered to [Century's] insured," but nevertheless told Century that Liberty Blue would tender to Century the following Monday. *Id.* Litchfield Cavo tendered a request on Liberty Blue's behalf on May 18, 2016. Lieberman Decl., Ex. X. On May 19, 2016, Century Surety's counsel, Traub Lieberman Straus & Shrewsberry LLP, replied to Litchfield Cavo's letter (the "May 19 Letter"). JSF ¶ 54; Lieberman Decl., Ex. Y. The May 19 Letter advised Liberty Blue that, if it did not withdraw its request for indemnification and a defense within five business days, "Century will file a declaratory judgment action to terminate its defense obligation to EM Windsor and obtain a judgment of no coverage as to Liberty Blue." JSF ¶ 55. That May 19 Letter was again copied to the Ownership Entities and their counsel, Ahmuty, Demers & McManus; EM Windsor and its counsel, Mr. Morgan; Mr. Paredes's counsel, Mr. Gorayeb; BKB; and Morstan. JSF ¶ 54. This action followed.

### E.   Procedural History of this Action

On June 6, 2016, Century Surety initiated this action by filing a complaint seeking a declaratory judgment that it is not obligated to provide coverage in the *Paredes* Action. Dkt. 1. On August 15, 2016, Liberty Blue filed its answer. Dkt. 18. On August 19, 2016, the Court, *sua sponte*, extended the deadline for the Ownership Entities to respond to the complaint from August 8, 2016, which they had missed, to August 22, 2016. Dkt. 20. On August 22, 2016, the Ownership Entities filed an answer, which added a mirror-image counterclaim for a declaration

that Century Surety's Policy requires Century Surety to provide coverage for the underlying *Paredes* Action. Dkt. 22 at ¶¶ 63–70.

On September 30, 2016, Century filed an amended complaint. Dkt. 29.[4] On October 5, 2016, the Ownership Entities filed an answer, and on October 6, 2016, Liberty Blue did the same; both defendants brought declaratory judgment counterclaims. Dkts. 33, 34. On October 13, 2016, Century Surety filed answers to the counterclaims. Dkts. 37, 38.

Discovery concluded on January 13, 2017. *See* Dkt 42 (extending discovery deadline). On February 1, 2017, the Court held a pre-motion conference, at which the parties previewed their anticipated motions for summary judgment and the Court set a briefing schedule for motions by Century, on the one hand, and by Liberty Blue and the Ownership Entities, on the other. *See* Dkt. 65.

On March 3, 2017, upon requests by Century Surety, *see* Dkts. 71, 73, the Clerk of Court entered default against both Paredes and EM Windsor, neither of who had appeared (or to date has appeared) in this case, Dkts. 75, 76.

On March 7, 2017, Century Surety filed its motion for summary judgment, Dkt. 77, a memorandum of law, Dkt. 77, Ex. 1, and a declaration of Meryl Lieberman and the exhibits attached thereto, Dkt. 78. On March 8, 2017, Century Surety filed a motion for default judgment against EM Windsor and Paredes. Dkt. 80.

On March 22, 2017, Liberty Blue and the Ownership Entities filed their motions for summary judgment and oppositions to Century Surety's motion for summary judgment. Dkts.

---

[4] The Amended Complaint's only change is to correct what Century Surety describes as a typographical error in the original complaint. The date on which Century Surety received EM Windsor's tender was erroneously reported there as March 4, 2016, instead of March 14, 2016. *See* Pl. Reply Br. at 8 n.1.

85–87 (Liberty Blue); Dkts. 88–90 (Ownership Entities). On April 5, 2017, Century Surety filed

its opposition and reply brief and a supplemental declaration from Ms. Lieberman containing

additional exhibits.[5] On April 19, 2017, Liberty Blue (Dkt. 106) and the Ownership Entities

(Dkt. 109) filed reply briefs.

On June 6, 2017, Century Surety submitted a letter alerting the Court to a decision that

day from the New York Court of Appeals, *The Burlington Insurance Company v. NYC Transit*

*Authority, et al.* Dkt. 113. Liberty Blue and the Ownership Entities each submitted a letter in

response. Dkts. 114, 115.

## II.    Discussion

### A.    Applicable Legal Standards

#### 1.    On a Motion for Summary Judgment

To prevail on a motion for summary judgment, the movant must "show [] that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). The movant bears the burden of demonstrating the absence of a

question of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

When the movant has properly supported its motion with evidentiary materials, the

opposing party must establish a genuine issue of fact by "citing to particular parts of materials in

the record." Fed. R. Civ. P. 56(c)(1); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir.

2009). An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a

verdict for the non-moving party. *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d

Cir. 2009). "[A] party may not rely on mere speculation or conjecture as to the true nature of the

---

[5] On April 13, 14, and 17, all parties re-filed their motions pursuant to instructions from the Clerk of Court. *See* Dkts. 95–97 (Liberty Blue), 98–100 (Century), 101–103 (Ownership Entities).

facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

"A court faced with cross-motions for summary judgment need not 'grant judgment as a matter of law for one side or the other,' but 'must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Cariou v. Prince*, 784 F. Supp. 2d 337, 345 (S.D.N.Y. 2011) (quoting *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993)); *see also, e.g., AGCS Marine Ins. Co. v. World Fuel Servs., Inc.*, 187 F. Supp. 3d 428, 435 (S.D.N.Y. 2016).

### 2. On a Motion for Default Judgment

The Court may grant a default judgment in favor of a plaintiff when a defendant has failed to plead or otherwise defend an action. *See* Fed. R. Civ. P. 55(a). "The dispositions of motions for entries of defaults and default judgments . . . are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). The Second Circuit has repeatedly emphasized its "preference for

resolving disputes on the merits," *id.,* and "when doubt exists as to whether default should be granted or vacated, the doubt should be resolved in favor of the defaulting party," *id.* at 96.

"It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint. However, it is also true that a district court 'need not agree that the alleged facts constitute a valid cause of action.' Indeed, [the Second Circuit has] recently suggested that, prior to entering default judgment, a district court is required to determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law." *City of New York v. Mickalis Pawn Shop, LLC,* 645 F.3d 114, 137 (2d Cir. 2011) (internal citations and quotations omitted).

### 3. For Construing Insurance Policies Under New York Law[6]

"The construction of an insurance contract is ordinarily a matter of law to be determined by the court." *U.S. Underwriters Ins. Co. v. Affordable Hous. Found., Inc.,* 256 F. Supp. 2d 176, 180 (S.D.N.Y. 2003) (citing *Town of Harrison v. Nat'l Union Fire Ins. Co. of Pittsburgh,* 89 N.Y.2d 308 (1996)). In resolving a summary judgment motion involving contract interpretation, "a court should accord [contract] language its plain meaning giving due consideration to the surrounding circumstances and apparent purpose which the parties sought to accomplish." *Palmieri v. Allstate Ins. Co.,* 445 F.3d 179, 187 (2d Cir. 2006) (quoting *Thompson v. Gjivoje,* 896 F.2d 716, 721 (2d Cir. 1990)).

When contract language is unambiguous, "the district court [may] construe it as a matter of law and grant summary judgment accordingly." *Id.* However, if policy language is

---

[6] As the parties all agree, the Policy is governed by New York law. *See Fed. Ins. Co. v. Am. Home Assur. Co.,* 639 F.3d 557, 566 (2d Cir. 2011) ("[W]here the parties agree that New York law controls, this is sufficient to establish choice of law.").

ambiguous, under New York law, such ambiguities must be construed in favor of the insured and against the insurer. *See Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 201 (2d Cir. 2010); *Handelsman v. Sea Ins. Co.*, 85 N.Y. 2d 96, 101 (1994) ("Where there is ambiguity as to the existence of coverage, doubt is to be resolved in favor of the insured and against the insurer.").

Whether a contract is ambiguous is a threshold question of law for the court. *Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006). "Language in an insurance contract will be deemed ambiguous if reasonable minds could differ as to its meaning." *Haber v. St. Paul Guardian Ins. Co.*, 137 F.3d 691, 695 (2d Cir. 1998). The Second Circuit has explained that "ambiguity exists where the terms of an insurance contract could suggest 'more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Morgan Stanley Grp. Inc. v. New England Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000) (quoting *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 906 (2d Cir. 1997)).

If the language in an insurance policy is ambiguous, the court should examine the language "from the vantage point of the reasonable expectations and purposes of the ordinary person." *Haber*, 137 F.3d at 695 (alterations and internal quotation marks omitted). The court should also "consider extrinsic evidence submitted by the parties to assist in determining their actual intent." *McCostis v. Home Ins. Co. of Ind.*, 31 F.3d 110, 113 (2d Cir. 1994). "If the extrinsic evidence does not yield a conclusive answer as to the parties' intent, it is appropriate for a court to resort to other rules of construction, including the contra-insurer rule, which states that

any ambiguity in an insurance policy should be resolved in favor of the insured." *Id.*; *see also*

*AGCS Marine Ins.*, 187 F. Supp. 3d at 436–37.

### III.  Analysis

The cross-motions for summary judgment raise two issues: First, does the Action Over

Exclusion, which excepts from coverage claims arising out of injuries suffered by employees of

Century Surety's insured while on the job, apply to the *Paredes* Action?  And, second, did

Century Surety timely disclaim its duty to defend and provide coverage in light of the Action

Over Exception?  For the reasons that follow, the Court holds with Century on both of these

points.  These rulings require granting Century's motion for summary judgment and denying the

cross-motions of the defendants who have appeared (Liberty Blue and the Ownership Entities).

The Court separately examines whether, as to EM Windsor, which has not appeared, Century

Surety is entitled to the entry of default judgment.  The Court holds that it is.

#### A.  Applicability of the Action Over Exclusion

By its terms, the Action Over Exclusion applies to the *Paredes* Action.  That provision

excludes from coverage, *inter alia*, "bodily injury" to an "'employee' of the named insured

arising out of and in the course of (a) employment by the named insured; or (b) performing

duties related to the conduct of the named insured's business." Policy at CEN 00080.  The

Exclusion applies "whether the named insured may be liable as an employer or in any other

capacity" and "to any obligation to share damages with or repay someone else who must pay

damages because of the injury." *Id.*

Generally, under New York law, an insurer has a duty to defend "whenever the

allegations in a complaint state a cause of action that gives rise to the reasonable possibility of

recovery under the policy." *Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y. 2d 61, 65 (1991).  The

allegations in the complaint are not, however, "in all cases, the *sole* determining consideration." *Id.* at 63. Where the "complaint allegations do not on their face set forth a covered cause of action," an insurer is not necessarily relieved of a duty to defend. *Id.* Rather, "the insurer must provide a defense if it has knowledge of facts which potentially bring the claim within the policy's indemnity coverage," even if, from the four corners of the complaint, the allegations do not fall within the insurer's duty to defend. *Id.* at 66. In contrast, "a liability insurer has a duty to defend its insured in a pending lawsuit if the pleadings allege a covered occurrence, even though facts outside the four corners of those pleadings indicate that the claim may be meritless or not covered." *Id.* at 63. Thus, where the facts in a complaint give rise to the reasonable possibility of coverage, an insurer cannot *disclaim* coverage on the basis of facts outside the complaint. *See Parler v. N. Sea Ins. Co.*, 11 N.Y.S.3d 659, 660 (N.Y. App. Div. 2015).

Here, Century Surety has demonstrated that the allegations in the underlying *Paredes* complaint bring Paredes's claim solely and entirely within the Action Over Exclusion. There is no genuine dispute that the claim at issue in the *Paredes* Action alleges "bodily injury" to "an employee" of the "named insured" "arising out of and in the course of . . . employment by the named insured." Paredes's complaint alleges that "on December 7, 2012, while [Paredes] was lawfully and carefully working on a ladder at [510 East 20th Street, New York, New York], he was caused to fall from said ladder by reason of the negligence of the defendant, its agents, servants, and/or employees in the ownership, operation, direction, supervision, possession, control, construction, repair, rehabilitation and/or alteration of the said premises sustaining the injuries hereinafter alleged." *Paredes* Complaint at ¶ 50. The complaint further alleges that, "by reason of the foregoing, the plaintiff has been rendered sick, sore, lame[,] maimed and disabled and so remains." *Id.* ¶ 54. Under New York law, the Action Over Exclusion thus squarely

applies to the *Paredes* Action so long as Century Surety does not have knowledge of facts that potentially bring the claim within the Policy.

Liberty Blue and the Ownership Entities argue that the Action Over Exclusion does not apply because, as they claim Century Surety knows, Paredes's injuries, contrary to his claims in the lawsuit, in actuality stem from a car accident unrelated to his employment with EM Windsor. *See* Liberty Blue Br. at 24–26; Ownership Br. at 9–17. While that argument may assist the defendants in opposing liability or damages in the *Paredes* Action, as a basis for justifying coverage by Century Surety it is unavailing. That is because, even if this alternative theory as to causation of Paredes's injury were true—i.e., that Paredes was injured in an accident unrelated to his employment—and knowledge of this were chargeable to Century Surety, Century Surety's coverage would not be implicated *at all*. Century Surety's insurance policy with EM Windsor is not triggered by a non-employment car accident involving Paredes. And on defendants' alternative account, Paredes's injuries would be traceable to a car accident that (a) happened years before the Policy was in effect and (b) was unconnected to EM Windsor. Such injuries could not conceivably fall within the coverage of the Policy. The Policy instead provides coverage for "bodily injury" and "property damage" that occurs within the Policy's "coverage territory" and the "policy period," subject to numerous exceptions. *See* Policy at CEN 00032. The Policy's period is December 6, 2012, to December 6, 2013. JSF ¶ 9. The supposed accident that may have caused Paredes's alleged injuries is said to have occurred "two years earlier" than the policy period. Liberty Blue Br. at 24. Thus, even if the *Paredes* Action defendants were to

defend by invoking the narrative that they posit here, there would be no possibility that the plaintiff's injury fell within the Policy's coverage. [7]

This case, therefore, is not controlled by the cases on which the Ownership Entities rely, because, unlike in those cases, the facts outside the complaint identified by Liberty Blue and the Ownership Entities do not establish "a reasonable possibility that [Paredes's] claim [is] within the policy's indemnity coverage." *City of New York v. Wausau Underwriters Ins. Co.*, 45 N.Y.S.3d 3, 7 (N.Y. App. Div. 2016); *see Fitzpatrick*, 78 N.Y.2d at 67. Accordingly, the Action Over Exclusion applies to the claims asserted in the *Paredes* Action.

### B. Timeliness of Century's Disclaimer of Coverage to the Ownership Entities and Liberty Blue

#### 1. Applicable Legal Principles

To disclaim a duty to defend, an insurer must do so "as soon as is reasonably possible." N.Y. Ins. Law. § 3420(d)(2). "A failure by the insurer to give such notice as soon as is reasonably possible after it first learns of the accident or of grounds for disclaimer of liability or denial of coverage, precludes effective disclaimer or denial." *Hartford Ins. Co. v. County of Nassau*, 46 N.Y. 2d 1028, 1029 (1979). "[T]imeliness of an insurer's disclaimer is measured from the point in time when the insurer first learns of the grounds for disclaimer of liability or denial of coverage." *First Fin. Ins. Co. v. Jetco Contracting Corp.*, 1 N.Y.3d 64, 68–69 (2003); *see U.S. Underwriters Ins. Co. v. City Club Hotel, LLC*, 369 F.3d 102, 106–107 (2d Cir. 2004).

---

[7] To the extent that Liberty Blue and the Ownership Entities suggest that Century Surety must prove—or that this Court must determine—the actual circumstances under which Paredes's injury occurred, that is wrong. Whether the Action Over Exclusion applies is determined by the allegations in the underlying complaint as well as "facts establishing a reasonable possibility of coverage" of which the insurer has "actual knowledge." *Fitzpatrick*, 78 N.Y.2d at 67. Where, as here, it is clear that neither the complaint nor the facts known to the insurer describe a circumstance under which there is a reasonable possibility that coverage would apply, the Court's inquiry is at an end. The cause of Paredes's injury, as between these alternatives, is instead properly left to the finder of fact at the trial of his case.

But because "an insurer's obligation to disclaim coverage as to a particular insured does not arise until that insured has provided notice of the occurrence or claim," *Webster ex rel. Webster v. Mount Vernon Fire Ins. Co.*, 368 F.3d 209, 214 (2d Cir. 2004), an insurer cannot learn of grounds for disclaimer as to a particular insured, for purposes of § 3420(d), until that insured has given notice of its claim. Indeed, "an insurer can hardly be said to have sufficient facts to issue a disclaimer before the insured has provided notice, because the insurer has no reason to anticipate that an insured will seek coverage until it is actually so notified." *Id.* at 216. Thus, the clock begins to run on an insurer's duty to disclaim only after an insured has provided notice.

Whether an insurer's disclaimer following such notice was timely "almost always presents a factual question, requiring an assessment of all relevant circumstances surrounding a particular disclaimer," and those "cases in which the reasonableness of an insurer's delay may be decided as a matter of law are exceptional and present extreme circumstances." *Cont'l Cas. Co. v. Stradford*, 11 N.Y.3d 443, 449 (2008). However, "where the grounds for disclaimer are not readily apparent, an insurer must be given reasonable time to adequately investigate a claim in order to determine whether it wishes to disclaim coverage." *U.S. Underwriters*, 369 F.3d at 107 (internal citations and quotations omitted). Still, "the insurer also has an obligation to engage in a reasonably prompt, thorough, and diligent investigation of the claim." *Id.*

Although not uniform, the case law applying this standard reflects that, in general, disclaimers made within 30 days of notice are treated as timely, whereas disclaimers beyond the 30-day point are generally treated as untimely. Thus, the court found "reasonably timely as a matter of law" a disclaimer issued 28 days after the insurer received notice. *Liberty Ins. Underwriters Inc. v. Great Am. Ins. Co.*, No. 09 Civ. 4912 (DLC), 2010 WL 3629470, at *9 (S.D.N.Y. Sept. 17, 2010); *see also, e.g., Am. Safety Cas. Ins. Co. v. 385 Onderdonk Ave., LLC,*

249 F. Supp. 3d 629, 635 (E.D.N.Y. 2017) (holding 29-day period timely as a matter of law); *DeSantis Bros. v. Allstate Ins. Co.*, 664 N.Y.S.2d 7, 8 (1997) (31-day period timely as a matter of law). Conversely, courts have held that delays of 30 days or longer are unreasonable as a matter of law. *W. 16th St. Tenants Corp. v. Pub. Serv. Mut. Ins. Co.*, 736 N.Y.S.2d 34, 35 (2002) (holding 30-day delay in disclaiming coverage unreasonable as a matter of law).

### 2. Timeline of Relevant Events

The timeline of events here, as established by the record evidence, is as follows.

On March 14, 2016, Century first received notice of the *Paredes* Action. Nine days later, on March 23, 2016, Century's claims adjuster, Ms. Weller, had a phone conversation with EM Windsor's principal, Mr. Gjeck. The following day, March 24, 2016, Ms. Weller issued Century's partial disclaimer to EM Windsor.

On April 13, 2016, Mr. Morgan, the defense counsel assigned by Century to defend EM Windsor, sent to Ms. Weller copies of the Second Third-Party Complaint in the *Paredes* Action and Paredes's pre-litigation petition from Bronx County Supreme Court, which consists of the Gorayeb Affirmation and the Paredes Affidavit, both of which state that, on the date of the alleged accident, Mr. Paredes was employed by EM Windsor.

On April 21, 2016, Century then sent the April 21 Letter, which disclaimed coverage for EM Windsor "or any other person or party claiming coverage under the Century policy for this matter." JSF ¶ 46. It explained that "coverage is unequivocally denied to all parties based on application of the policy's Action Over Exclusion." *Id.* The letter referred to both the Gorayeb Affirmation and the Paredes Affidavit as evidence that Paredes had been employed by EM Windsor "on the date of the accident that is the subject of the lawsuit." *See* JSF ¶ 47. Century sent the April 21 Letter to EM Windsor, copying Mr. Morgan, its counsel; Mr. Gorayeb, Mr.

Paredes's counsel; Ahmuty, Demers & McManus, the Ownership Entities' counsel, as well as the Ownership Entities themselves; Louis Eckert of Litchfield Cavo LLP, Liberty Blue's counsel; Liberty Blue; BKB; and Morstan. JSF ¶¶ 44, 48.

On May 6, 2016, Liberty Blue's counsel objected to Century Surety's disclaimer in a letter to Century Surety. *See* Lieberman Decl., Ex. U. That same day, Ms. Weller replied that Century Surety had "never received a tender from" Liberty Blue. JSF ¶ 53. Liberty Blue's counsel replied, again on May 6, that Liberty Blue had "tendered to [Century's] insured." *Id.* Then, on May 18, 2016, Liberty Blue's counsel tendered a request on Liberty Blue's behalf for Century Surety to provide Liberty Blue's defense and for indemnification in the *Paredes* Action. Lieberman Decl., Ex. X. On May 19, 2016, Century Surety's counsel, Traub Lieberman Straus & Shrewsberry LLP, replied, advising Liberty Blue that, if it did not withdraw its request for indemnification and a defense within five business days, "Century will file a declaratory judgment action to terminate its defense obligation to EM Windsor and obtain a judgment of no coverage as to Liberty Blue." JSF ¶ 55; Lieberman Decl., Ex. Y.

### 3. Analysis

The Court's assessment as to timeliness is distinct as to different moving defendants.

#### a. Timeliness as to Ownership Entities

Century's disclaimer was timely as to the Ownership Entities. These entities concede that they did not seek coverage from Century until August 22, 2016. JSF ¶ 57; Ownership Br. at 8–9. And they do not contend that Century's disclaimer was untimely. Instead, they argue that Century's disclaimer of coverage as to them did not comply with New York Insurance Law § 3420(d), because it was made in Century's answer to their counterclaims in this litigation. Ownership Br. at 19; *see* Dkt. 22 (Ownership Entities' counterclaim); Dkt. 25 (Century Surety's

answer). And that answer, the Ownership Entities contend, did not include the requisite specific recitation of the Action Over Exclusion.

That analysis is mistaken. Long before August 22, 2016, Century Surety had *already* disclaimed coverage to the Ownership Entities, both in the April 21 Letter sent to those entities as well as by commencing this action. And, under § 3420(d), "commencing a declaratory judgment action is sufficient notice of an insurance company's disclaimer of liability." *U.S. Liab. Ins. Co. v. Albertell*, No. 92 Civ. 301 (JSM), 1992 WL 380024, at *4 (S.D.N.Y. Dec. 7, 1992). The Ownership Entities had adequate notice of Century's disclaimer before they had even brought their counterclaims. There is, therefore, no dispute that Century's disclaimer as to the Ownership Entities was timely and otherwise proper.

### b. Timeliness as to Liberty Blue

Century Surety's disclaimer was also timely as to Liberty Blue. Timeliness "is measured from the point in time when the insurer first learns of the grounds for disclaimer of liability or denial of coverage," *First Fin. Ins. Co.*, 1 N.Y. 3d at 68–69, which, in turn, depends upon the "insured . . . provid[ing] notice of the occurrence or claim," *Webster*, 368 F.3d at 214.

Here, Liberty Blue first requested coverage from Century Surety on May 18, 2016. Lieberman Decl., Ex. X; *see id.*, Ex. Y; Pl. Reply Br. at 11. At that point, Century Surety had already disclaimed coverage in its April 21 letter. The April 21 Letter stated that Century was denying coverage to "any other person or party claiming coverage under the Century policy for this matter." Lieberman Decl., Ex. T. The day after receiving Liberty Blue's May 18 request for coverage, Century Surety reiterated its disclaimer by letter. Lieberman Decl., Ex. Y. In that May 19 Letter, Century's counsel states, "Century reaffirms and restates its April 21, 2016

coverage determination, which is incorporated herein." *Id.* at 1. This disclaimer was unequivocal and timely.

In claiming untimeliness, Liberty Blue argues that Century's disclaimer was untimely on the grounds that Liberty Blue's Third-Party Complaint in the *Paredes* Action, filed in September 2015, constituted notice to Century Surety. *See* Liberty Blue Br. at 30–32. But that is wrong, as there is no evidence that Liberty Blue notified *Century Surety* of its Third-Party Complaint. And as the Second Circuit has held, such notice was required. As then-Judge Sotomayor, writing for the Circuit in *Webster*, *supra*, explained: "If an insurer were required to disclaim coverage even as to insureds who never notified the insurer of their intention to seek coverage, the insurer would be forced to undertake needless investigations to protect against the possibility that it could be required to provide coverage, despite the insured's noncompliance with the terms of the policy, in later litigation." 368 F.3d at 216. Moreover, "[b]ecause an insured has a contractual obligation under the policy to provide timely notice of a claim, the insurer does not become obligated to disclaim coverage until the insured provides notice." *Id.* at 214; *see also id.* ("[T]here is no obligation to disclaim coverage until notice of claim is received, and insurer's failure to disclaim as to non-notifying insured does not obligate insurer to provide coverage) (citing *Roofing Consultants v. Scottsdale Ins. Co.,* 709 N.Y.S.2d 782, 783 (N.Y. App. Div. 2000); *id.* ("There is no evidence that [the insured] provided notice of the occurrence to [the insurer], thereby triggering an obligation by [the insurer] to disclaim specifically based upon [the insured's] failure to provide timely notice." (quoting *Dryden Mut. Ins. Co. v. Brockman,* 687 N.Y.S.2d 504, 506 (N.Y. App. Div. 1999)).

That Liberty Blue's Third-Party Complaint was not itself notice to Century Surety is further supported by the May 2016 correspondence between Century Surety and Liberty Blue's

counsel, Louis Eckert. Mr. Eckert there effectively acknowledged that Liberty Blue had not

given notice to Century Surety of its claim: In a May 6, 2016 email, he wrote, "I will have that

[Liberty Blue's written tender of a coverage request] to you on [M]onday. We tendered to your

insured." JSF ¶ 53. Tendering to Century Surety's insured—EM Windsor—was not sufficient

to have put Century Surety on notice of Liberty Blue's claim to coverage as an additional

insured. Century Surety's disclaimer, made on May 19, 2016, the day after first receiving such

notice from Liberty Blue, is timely as a matter of law.

### C.     Century Surety's Claim to a Default Judgment as to EM Windsor

Finally, Century Surety pursues entry of a default judgment on its claim for a declaratory

judgment to the effect that it does not owe coverage to EM Windsor. Such a default judgment is

merited. Despite being properly served, EM Windsor has failed entirely to participate in this

action since it was initiated in June 2016. And the facts adduced in discovery reveal that EM

Windsor does not have a meritorious defense to Century's claim for a declaratory judgment. As

the Court has held, the Action Over Exclusion applies to Paredes's claim against EM Windsor.

And as explained below, the Court also holds that Century Surety's disclaimer was timely as to

EM Windsor.

"[P]rior to entering default judgment, a district court is required to determine whether the

[plaintiff's] allegations establish [the defendant's] liability as a matter of law." *City of New York

v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (alterations in original) (internal

quotation omitted); *see Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 116 n.17 (2d Cir. 2015). For

this reason, notwithstanding EM Windsor's failure to participate in this action, the Court, before

entering default judgment, considers the merits of Century Surety's claim against it, as

elucidated by the discovery undertaken and submissions made by the other parties, including EM

24

Windsor's co-defendants, who have made arguments on its behalf. Having reviewed these submissions, the Court is persuaded that, even if EM Windsor had defended against Century Surety's declaratory judgment claim, Century Surety would have been entitled to summary judgment on that claim

EM Windsor's co-defendants argue that Century Surety's disclaimer as to EM Windsor was untimely because (1) Century must have known about the *Paredes* Action earlier than March 14, 2016; (2) Century could have disclaimed coverage based on facts known to it other than the filings in the *Paredes* Action, making its disclaimer only after receipt of the Gorayeb Affirmation and Paredes Affidavit untimely; and (3) Century Surety's March 24 Letter was not a disclaimer, but merely a reservation of rights. None of these arguments is meritorious.

First, the record does not support the defendants' claim that Century Surety knew about the *Paredes* Action before March 14, 2016. Defendants rely on the testimony of Valerie Ndou, a representative of BKB, who testified that she "believed" that she forwarded a copy of the March 1 Letter—from Liberty Blue's counsel, Litchfield Cavo, to Tower Insurance, seeking a defense takeover—to Morstan, Century's agent under the Policy, before March 14, 2016. *See* Lewbel Decl., Ex. R (Deposition of Valeria Ndou), at 102–104. But Ms. Ndou's testimony is equivocal, and it is unsubstantiated by any documentary evidence. Most significantly, Morstan's document production in this case revealed *no* documentary evidence of a copy of the March 1 Letter having been forwarded to Morstan. *See* Pl. Br. at 14–16. And Ms. Ndou testified that she had "no basis" for believing she had forwarded the March 1 Letter to Morstan. Lieberman Decl., Ex. C (Deposition of Valeria Ndou), at 153–154. Ms. Ndou's testimony does not, therefore, create a genuine dispute of fact as to when Century first received notice of the *Paredes* Action.

The participating defendants separately argue that Century must have known about the *Paredes* Action because of an email sent by Morstan on March 16, 2016. Lewbel Decl. Ex. L; *see id.*, Ex R. (Ndou Depo.) at 111. But as Century Surety rightly explains, "an email acknowledgment sent after the date that Century was notified (March 14, 2016) has no probative value whatsoever as to whether Century was notified prior to that date." Pl. Reply Br. at 5.

Second, it is not correct that Century could have disclaimed coverage of EM Windsor based on facts known to it outside the filings in the *Paredes* Action. *Fitzpatrick* prohibits an insurer from disclaiming coverage based on facts extrinsic to the complaint to deny a duty to defend; it instead allows an insurer to seek a declaratory judgment that an exclusion to its policy applies where developments *in the litigation* make clear that it does. Read together, the rule of *Fitzpatrick* (that an insurer may not disclaim coverage based on evidence extrinsic to the complaint) and the rule of Section 3402 (that an insurer must disclaim as soon as reasonably possible after learning of its grounds to disclaim) mean that an insurer must continue to provide coverage until it becomes aware of evidence *intrinsic* to the pending litigation that shows that "allegations of the complaint [are] solely and entirely within the exclusion." *Parler*, 11 N.Y.S.3d at 660.

Third and finally, it is neither true nor material that Century Surety's March 24 Letter was a reservation of rights. *See* Liberty Blue Br. at 26. In that letter, Century Surety did not *fully* disclaim coverage, as it offered a defense to EM Windsor in the underlying *Paredes* Action. But the letter is also plainly not a mere reservation of rights, but rather a partial disclaimer. Indeed, it is labeled as such. And it states: "Century has agreed to provide a defense to EM Windsor under a Partial Disclaimer." Lieberman Decl., Ex. R, at 2. To be sure, a "reservation of rights letter has no relevance to the question whether the insurer has timely sent a notice of

disclaimer of liability or denial of coverage." *Hartford Ins. Co. v. Nassau Cty.*, 46 N.Y.2d 1028, 1029 (1979). But the "reservation of rights letter" at issue in *Hartford Insurance* did not disclaim coverage or the insurer's defense obligation; the Partial Disclaimer at issue here did just that.

Even if the March 24 Letter were not a valid disclaimer, Century Surety nevertheless timely disclaimed its defense and coverage obligations. As noted above, Century was unable to fully disclaim until it received notice, based on facts intrinsic to the underlying *Paredes* action, that Paredes was an employee of EM Windsor at the time of the alleged accident. Thus, Century was unable to disclaim until after receiving the Gorayeb Affirmation and the Paredes Affidavit. Upon receipt of those documents, Century Surety disclaimed virtually immediately. Thus, whatever the status of the March 24 Letter, the April 21 Letter timely disclaimed Century's duty to defend as to EM Windsor.

## CONCLUSION

For the foregoing reasons, the Court grants Century Surety's motion for summary judgment as against Liberty Blue and the Ownership Entities, and its motion for a default judgment as against EM Windsor. The Court therefore hereby enters a declaratory judgment for Century Surety to the effect that Century Surety has no duty to defend or indemnify EM Windsor or any other party in the underlying *Paredes* Action.

The Clerk of Court is respectfully directed to terminate the motions pending at Dockets 80, 95, 98, and 101, and to close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: November 29, 2017
      New York, New York